# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRYAN EDWARD O'NEAL and
KATHLEEN ROBINSON,

    Plaintiffs

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; LINDA THEOBALD;
PROKOPIOS ZIROS; GUSTAVO RIOS;
CLARK COUNTY; and NAPHCARE, INC.,

    Defendants

Case No.: 2:17-cv-02765-APG-GWF

**Order Granting in Part and Denying in Part Defendants' Motions to Dismiss**

[ECF Nos. 7, 9, 15]

Plaintiffs Bryan O'Neal and Kathleen Robinson allege that the defendants illegally searched and seized their property, failed to return that property, and failed to properly care for O'Neal while he was in custody. Their complaint asserts the following claims: multiple violations of 42 U.S.C. § 1983; false arrest and imprisonment; malicious prosecution; intentional infliction of emotional distress (IIED); unjust enrichment; civil racketeering; civil conspiracy; negligence; negligence per se; negligent hiring, training, and supervision; gross negligence; loss of consortium; negligent infliction of emotional distress (NIED); and conversion.

The Las Vegas Metropolitan Police Department (LVMPD), Linda Theobald, Prokopios Ziros, and Gustavo Rios (together, the LVMPD Defendants) move to dismiss most of the claims against them, while Clark County and Naphcare, Inc. move to dismiss all the claims brought against them. I grant in part each motion to dismiss as discussed below.

## I.    BACKGROUND

The following allegations are taken from the plaintiffs' complaint and are accepted as true at this stage. In late 2015, LVMPD officers came to the plaintiffs' home to arrest O'Neal

under an Illinois fugitive warrant. ECF No. 1 at 6. O'Neal was handcuffed and placed in a police vehicle. *Id.* The police officers then entered the house without O'Neal's permission. *Id.* The officers entered the garage and retrieved a backpack containing marijuana. *Id.* The officers then searched the home and a car in the garage, again without O'Neal's permission. *Id.* at 6–7. After threatening O'Neal with the arrest of his wife and mother-in-law, he consented to the search of the car but not the home. *Id.* at 7. When Robinson returned home, the officers asked her to open a safe, but she did not have the key. *Id.* She retrieved her keys from her purse, which Officer Rios took after determining one was a key to a vault. *Id.*

O'Neal remained in the police car for approximately three hours before being transferred to the Clark County Detention Center (CCDC). *Id.* The officers, including Theobald, Ziros, and Rios, took an electronic scale, four duffle bags, four "divers" bags, two keys, over $8,000, three phones, and paperwork from the plaintiffs' home and car. *Id.* at 8.

The next day, LVMPD officers staked out the storage facility where the plaintiffs rented a vault. *Id.* Robinson went to the vault to retrieve money for O'Neal's bail, but the officers pulled her over without cause and detained her for four hours and threatened arrest if she did not give them access. *Id.* The officers searched her purse and confiscated $980. *Id.* Robinson consented to the search of the vault, but the owner of the facility refused the police access until they provided a warrant based on their search of the plaintiffs' home and vehicle. *Id.* at 8–9. The officers seized over $139,000 in cash, 275 one-ounce silver rounds, 60 grams of gold, and a bag containing silver antique coins. *Id.* at 9. They provided Robinson receipts for the property and money taken from the house, car, and her purse, but not for the items taken from the vault. *Id.*

Following his arrest, O'Neal was incarcerated for approximately ten days based on the Illinois warrant. *Id.* Based on the items seized, he was confined at CCDC in April 2016. *Id.* at 9–

1  10. While there, he injured his shoulder getting off his top bunk bed using an unsafe metal ladder. *Id.* at 10. O'Neal sought treatment but was refused care by CCDC and Naphcare, a corporation that contracted with Clark County to provide medical care and services to detainees at CCDC. *Id.* at 4, 10. After several months of requesting and being denied treatment, O'Neal was taken to an offsite doctor who prescribed him pain medication. *Id.* at 10. Naphcare refused to provide him the medication, and CCDC put him into segregated housing for repeatedly demanding his prescribed medication. *Id.* O'Neal continued to be assigned to a top bunk, resulting in re-aggravating injuries to his shoulder. *Id.*

In September 2016, O'Neal was released from CCDC after the Nevada state court found that the LVMPD officers had illegally searched the plaintiffs' home, car, and vault. *Id.* at 11. The court also ordered the return of all property and money taken, and the charges against O'Neal were dropped. *Id.* However, LVMPD has refused to return the property and money. *Id.*

## II. ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

/ / / /

/ / / /

A. *Naphcare's Motion*

The plaintiffs assert the following claims against Naphcare: violation of § 1983; IIED; negligence; negligence per se; gross negligence; negligent hiring, training, and supervision; and NIED. Naphcare moves to dismiss all the claims, contending that because they arise from the alleged deprivation of appropriate medical care, they are actually medical malpractice claims. Under Nevada Revised Statutes § 41A.071, an action for professional negligence, including medical malpractice, must be dismissed without prejudice if it is filed without an expert affidavit.[1] Because the plaintiffs did not file an affidavit, Naphcare argues all claims against it must be dismissed. The plaintiffs respond that the claims against Naphcare are not for medical malpractice but instead for Naphcare's decision not to treat O'Neal in order to punish him.

1. Section 1983 Claim

The plaintiffs claim that Naphcare had a policy and practice of tolerating "cruel and unusual punishment including the denial of medical attention" in violation of the Fourth and Fourteenth Amendments. ECF No. 1 at 14, 15. "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). Naphcare does not argue that it was not acting under color of law.

The plaintiffs allege the constitutional violation at issue is the refusal to provide medical care to a pretrial detainee. Because O'Neal was a pretrial detainee, his constitutional rights

---

[1] "Professional negligence" is defined as "the failure of a provider of healthcare, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." Nev. Rev. Stat. § 41A.015.

4

derive from the due process clause rather than the Eighth Amendment. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). Pretrial detainees are entitled to at least the same duty the Eighth Amendment imposes: "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Id.* (quotation omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (quotation omitted).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Naphcare's argument that the plaintiffs' § 1983 claim is a medical malpractice claim is flawed because the legal standards for the two claims are different. *Cf. Cavalieri v. Las Vegas Metro. Police Dep't*, No. 2:11-cv-00351-ECR, 2012 WL 846466, at *7 (D. Nev. Mar. 13, 2012) (holding that the medical malpractice statute of limitations does not apply to claims of deliberate indifference to serious medical needs because of the different legal standards); *Plonsky v. Las Vegas Metro. Police Dep't*, No. 2:11-cv-00026, 2011 WL 2680733, at *3 (D. Nev. Jul. 8, 2011) (same). A § 1983 deliberate indifference claim is not a medical malpractice claim, so no affidavit is required under § 41A.071. Therefore, Naphcare's motion to dismiss is denied as to the plaintiffs' § 1983 claim.

2. State Law Claims

"Allegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice." *Szymborski v. Spring Mtn. Treatment Ctr.*, 403 P.3d 1280, 1284 (Nev. 2017). To determine whether a claim is for medical malpractice, however pleaded, I "must look to the gravamen or substantial point or essence" of the claim. *Id.* at 1285.

5

The plaintiffs allege that after O'Neal fell off his top bunk bed, "Naphcare refused to provide care for O'Neal" for his injured shoulder. ECF No. 1 at 10. Further, after an offsite doctor prescribed medication for O'Neal, "Naphcare refused to provide O'Neal with the prescribed pain medication . . . ." *Id.* The plaintiffs do not provide any explanation for Naphcare's refusal to treat O'Neal or to provide his medication. The plaintiffs have not alleged sufficient facts to plausibly claim that Naphcare's refusals were based on non-medical judgments or diagnoses. Absent additional factual allegations, the only plausible explanation is that Naphcare examined O'Neal and deemed his alleged injury insufficient for further treatment or pain management. To determine whether these decisions were reasonable, expert testimony will be necessary to establish the appropriate standard of care. The plaintiffs thus "state claims for relief . . . based in medical treatment or judgment." *Id.* at 1288. The affidavit requirement applies to all of the plaintiffs' claims, including their IIED claim. *See Fierle v. Perez*, 219 P.3d 906, 913 n.8 (Nev. 2009) (holding "both intentional and negligence-based medical malpractice claims are included in the affidavit requirement"), *overruled on other grounds by Egan v. Chambers*, 299 P.3d 364 (Nev. 2013).

Therefore, I dismiss the state-law claims against Naphcare without prejudice for failure to file the required affidavit. I deny the plaintiffs' request to amend their complaint to add an affidavit because a complaint that is "defective under [Nevada Revised Statutes §] 41A.071 is void and cannot be amended." *Washoe Med. Ctr. v. Second Judicial Dist. Ct. of State of Nev. ex rel. Cty. of Washoe*, 148 P.3d 790, 794 (Nev. 2006) (en banc). However, if the plaintiffs can plead sufficient facts to plausibly claim that Naphcare's refusals to treat O'Neal and provide his medications were not based on medical judgments or diagnoses, they may amend their complaint to assert that.

*B. Clark County's Motion*

The plaintiffs allege the same claims against Clark County as they do against Naphcare. Clark County contends it cannot be held liable for any of the claims against it because it funds CCDC but does not have control over its operation. The plaintiffs respond that they alleged Clark County contracted with Naphcare to provide services to inmates at CCDC, and Clark County is liable for the actions of its contractor.

Because I dismissed the state law claims against Naphcare, the plaintiffs cannot sustain their state law claims against Clark County based on its contractual relationship with Naphcare. I therefore dismiss the state law claims against Clark County without prejudice.

Clark County's argument that it does not control the operation of CCDC does not require dismissal of the § 1983 claim at this stage. The plaintiffs allege that Clark County is the entity that contracted with Naphcare to provide medical services at CCDC. The plaintiffs further allege that Naphcare had a policy of refusing medical treatment. Although Naphcare provides the medical care at CCDC, Clark County remains liable for any constitutional deprivations caused by the policies, practices, or customs of its contractor. *See West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."); *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2013) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services . . . . The underlying rationale is not based on *respondent* [sic] *superior*, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it."); *Ancata v. Prison Health Servs.*, 796 F.2d 700, 706 (11th Cir. 1985) ("[I]f the county permitted the sheriff and/or prison

health officials that it contracted with to establish such a policy or custom, it may also be liable."). Therefore, I deny Clark County's motion to dismiss the plaintiffs' § 1983 claim against it.

### C. LVMPD Defendants' Motion

#### 1. Section 1983 Claims

The allegations in claim one deal with the alleged search and seizure, arrest, and prosecution. The allegations in claim two deal with the alleged refusal to care for O'Neal's injuries at CCDC. The third claim alleges LVMPD had a policy or practice of tolerating the various allegations underlying claims one and two.

The LVMPD defendants move to dismiss claims one and two with respect to LVMPD, and claim three with respect to all of the LVMPD defendants. They argue that as to LVMPD, the first two claims are redundant with the third claim and that LVMPD cannot be held liable except under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). They also argue the individual defendants cannot be held liable under *Monell*. Finally, they contend the plaintiffs have not adequately alleged a policy or practice that caused any constitutional violations. The plaintiffs agree to the dismissal of the individual plaintiffs under claim three. However, they argue that claims one and two are distinct from claim three, and that they have sufficiently alleged all three claims.

A municipal entity may be held liable for its employees' conduct under *Monell* if the conduct was the result of (1) an expressly adopted official policy, (2) a longstanding practice or custom that constitutes the standard operating procedure of the municipality, (3) a decision of an official who was a final policymaking authority whose edicts may be fairly said to represent official policy, or (4) a municipality's failure to train its employees when the failure to train

amounts to deliberate indifference to the rights of others. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Municipalities may not be held liable under a theory of *respondeat superior*. *Monell*, 436 U.S. at 690.

The plaintiffs' first two claims do not allege the existence of any LVMPD policy or practice. Moreover, the plaintiffs' *Monell* claim alleges LVMPD had policies or practices to tolerate the various constitutional violations alleged in the first two claims, making those claims redundant in addition to insufficiently pleaded. Therefore, I dismiss with prejudice claims one and two against LVMPD.

Additionally, the plaintiffs' *Monell* claim is not plausibly pleaded because their allegations merely recite the elements of their federal and state-law claims. For example, the plaintiffs allege LVMPD has policies to "tolerate and allow the unlawful arrests of citizens," to "tolerate unreasonable search and seizure," to "tolerate the unlawful theft of citizens['] money and property," and to "tolerate cruel and unusual punishment including the denial of medical attention." ECF No. 1 at 15. The plaintiffs have provided no factual support to plausibly allege that LVMPD has such policies. Because the plaintiffs have made only conclusory allegations, I dismiss their *Monell* claim without prejudice as to LVMPD. Because the plaintiffs concede claim three is not proper against Theobald, Ziros, and Rios, I dismiss claim three against them with prejudice.

### 2. False Arrest/False Imprisonment

The plaintiffs' fourth claim is for false arrest/false imprisonment based on the LVMPD defendants' detaining Robinson to gain access to the plaintiffs' vault. The LVMPD defendants move to dismiss, contending O'Neal was arrested and detained pursuant to a valid warrant. The plaintiffs respond that the claim addresses LVMPD's detention of Robinson not of O'Neal.

The plaintiffs allege that when Robinson went to the vault, the LVMPD defendants pulled her over without cause and detained her for four hours while threatening to arrest her. They allege this detention constitutes false arrest and false imprisonment. The LVMPD defendants' motion does not address these allegations. Therefore, I deny the motion to dismiss this claim.

### 3. Malicious Prosecution

The plaintiffs' fifth claim is for malicious prosecution.[2] The plaintiffs allege that the LVMPD defendants lacked probable cause to commence criminal proceedings against O'Neal. The LVMPD defendants argue that even though the evidence retrieved in their search was suppressed, the marijuana gave them sufficient probable cause to arrest O'Neal and initiate a prosecution. They also contend that the plaintiffs did not allege that O'Neal was prosecuted for the purpose of denying him a constitutional right, so the § 1983 claim for malicious prosecution must be dismissed. The plaintiffs respond that there was no probable cause for the prosecution because the evidence was retrieved in an illegal search.

To state a claim for malicious prosecution under Nevada law, a plaintiff must show that (1) the defendants lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in his favor, and (4) the plaintiff suffered damages. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). A malicious-prosecution claim under § 1983 requires proof of a state-law malicious-prosecution claim and the additional element that the defendants prosecuted the plaintiff with the intent to deprive him of a constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted).

---

[2] The plaintiffs appear to bring both a § 1983 claim for malicious prosecution (claim one) and a state law claim (claim five). *See* ECF No. 1 at 13–14, 18–19. To the extent the § 1983 claim is brought against LVMPD, it is dismissed as discussed above.

10

The plaintiffs' argument that because the evidence found in their house, car, and vault was suppressed there was no probable cause to prosecute O'Neal is unavailing. In *Lingo v. City of Salem*, 832 F.3d 953 (9th Cir. 2016), the court rejected the contention that "probable cause to arrest may be supported only by information that was obtained in accordance with the Fourth Amendment." *Id.* at 960. The court noted that "nothing within the fruit-of-the-poisonous-tree doctrine suggests than an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search." *Id.* Probable cause determinations "depend on the substance of the information known to the officer, not whether that information would be inadmissible in court." *Id.*

The LVMPD defendants found marijuana, an electronic scale, and other items that were sufficient for probable cause to arrest and prosecute O'Neal. Therefore, the plaintiffs have not sufficiently alleged the defendants lacked probable cause to initiate the prosecution. I grant the motion to dismiss the state-law malicious prosecution claim with prejudice.

Because the plaintiffs cannot prove their state-law malicious-prosecution claim, their federal claim also fails. In addition, the plaintiffs do not allege that O'Neal was prosecuted with the intent to deprive him of a constitutional right. Therefore, I dismiss with prejudice the § 1983 malicious-prosecution claim against Theobald, Ziros, and Rios.

4. Unjust Enrichment and Conversion

The plaintiffs' seventh and sixteenth claims are for unjust enrichment and conversion. They allege that the LVMPD defendants took money and property from them that was never returned. The LVMPD defendants argue that all the property that was taken was returned. They request I take judicial notice of the state court's disposition of O'Neal's motion contending LVMPD had not returned all property it had been ordered to return. The plaintiffs respond that

they are seeking items never inventoried or accounted for by the LVMPD defendants, rather than the items ordered returned by the state court.

To state a claim for unjust enrichment, the plaintiffs must show "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (quotation omitted). To state a claim for conversion, the plaintiffs must show "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (quotation omitted).

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted). One exception, however, is that the court may take judicial notice of matters of public record. *Id.* at 689. However, "a court may not take judicial notice of a fact that is subject to reasonable dispute." *Id.* (quotation omitted). When "a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690.

The LVMPD defendants attached three exhibits to their motion. The first is O'Neal's motion in state court for an order to show cause why LVMPD should not be held in contempt for refusing to comply with a court order to return O'Neal's property. Attached to that motion are the state court's order requiring the return of certain property, the arrest report, and various letters. The second exhibit is LVMPD's brief in response to that motion. The third is the register of actions of the state court, showing that O'Neal's motion was denied.

1 | I take judicial notice of the state court order and the register of actions, as well as the fact
2 | of the filing of O'Neal's motion and LVMPD's response. Even considering these exhibits, they
3 | do not negate the plaintiffs' allegations of seizure and non-return of property. The LVMPD
4 | defendants cite primarily to their own brief as proof of their argument that all property ordered to
5 | be returned was returned and that therefore they did not convert the plaintiffs' property and were
6 | not unjustly enriched. However, these allegations are not proper for judicial notice because they
7 | are not undisputed matters of public record. Viewing the allegations in the light most favorable
8 | to the plaintiffs, they have plausibly alleged that the LVMPD defendants wrongfully exerted
9 | dominion over the plaintiffs' property against the fundamental principles of justice. Therefore, I
10 | deny the motion to dismiss these claims.

### 5. Racketeering

The plaintiffs' eighth claim alleges that the LVMPD defendants violated federal and state racketeering laws by taking and not inventorying or returning their money and property. The LVMPD defendants contend that LVMPD as an entity is not a proper defendant for this claim, so it must be dismissed. In addition, they argue that the plaintiffs have not alleged the necessary racketeering activity. The plaintiffs agree to the dismissal of LVMPD for this claim. However, they argue that the allegations of theft of their property over multiple days sufficiently states a claim.

Government entities are not proper defendants in federal RICO actions because they are "incapable of forming [the] malicious intent necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (alteration in original) (internal quotation omitted). I have previously predicted that the Supreme Court of Nevada would hold that government entities are not proper defendants under the Nevada RICO statute. *Top Rank Builders, Inc. v. Charles*

*Abbott Assocs., Inc.*, No. 2:16-cv-02903-APG-CWH, 2017 WL 4532148, at *3 (D. Nev. Oct. 6, 2017). Therefore, I dismiss this claim against LVMPD with prejudice.

The LVMPD defendants also argue that the plaintiffs do not allege at least two acts of racketeering activity. The plaintiffs allege that on November 5, 2015, Theobald, Ziros, and Rios "took, and did not return" property and money from their home and car. ECF No. 1 at 8. They further allege that the following day, those same officers took and did not return $980 from Robinson's purse, and more money and property from their vault. *Id.* at 8–9. The plaintiffs allege that this property was illegally kept and never returned to them. The LVMPD defendants attempt to conflate these separate acts into a single act. However, the plaintiffs have sufficiently alleged multiple acts of racketeering activity—the theft from the car and home, the theft from the vault, and the possession and withholding of stolen goods.

The LVMPD defendants argue that the plaintiffs' stipulation to the dismissal of LVMPD does not save their claim, because their theory of liability is that the government conspired in a racketeering scheme. However, the plaintiffs are the masters of their own complaint, including the theory of liability on which they proceed. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As discussed above, reading the complaint in the light most favorable to the plaintiffs, sufficient facts are alleged to show that the officers engaged in racketeering activity. The LVMPD defendants have not shown that dismissal of LVMPD requires the dismissal of the entire claim. Therefore, I grant the motion to dismiss as to LVMPD with prejudice, but deny the motion to dismiss as to Theobald, Ziros, and Rios.

      6. Civil Conspiracy

The plaintiffs' ninth claim alleges that the LVMPD defendants conspired to "misappropriate" the plaintiffs' money and property. ECF No. 1 at 22. The LVMPD defendants

14

contend that a government agency cannot conspire with its employees. They also argue that employees of a single entity cannot conspire unless acting outside the course and scope of their employment and the plaintiffs have not alleged that Theobald, Ziros, and Rios acted outside the course and scope of their employment. The plaintiffs agree to dismiss LVMPD, but argue the officers conspired to take and keep unaccounted for money and property for themselves.

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983). A "corporation cannot conspire with its employees if those employees are acting within the course and scope of their employment." *Laxalt v. McClatchy*, 622 F. Supp. 737, 745 (D. Nev. 1985). Furthermore, employees cannot conspire among themselves unless they were "acting as individuals for their individual advantage, and not in the course and scope of their employment." *Id.*

The LVMPD defendants contend that the plaintiffs did not allege that the individual defendants were acting as individuals for their individual advantage. The plaintiffs allege that the officers took property and money from them without providing the proper documentation and without ever returning it. The plaintiffs have not alleged in their complaint that the officers took this property and money and did not turn it over to LVMPD, only that it was confiscated and that LVMPD did not return it to them. *See* ECF No. 1 at 8–9, 11. Consequently, they have not sufficiently alleged that the officers were acting as individuals for their individual advantage. Therefore, I grant the motion to dismiss this claim with prejudice against LVMPD and without prejudice against Theobald, Ziros, and Rios.

/ / / /

7. <u>Negligent Hiring, Training, Selection, and Supervision</u>

The plaintiffs claim that LVMPD had a duty to properly train and supervise its employees to avoid "unreasonable risk of harm to citizens" and that it breached this duty. ECF No. 1 at 25. LVMPD contends it has discretionary immunity for negligent hiring and supervision claims. The plaintiffs respond that this immunity is available only where there is no bad faith, and the LVMPD officers acted in bad faith when stealing their property and refusing O'Neal medical treatment.

Nevada Revised Statutes § 42.032 defines the exceptions to Nevada's general waiver of sovereign immunity. Under § 42.032(2), no action may be brought against a state agency or political subdivision "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." The Supreme Court of Nevada looks to federal law to determine whether immunity for a discretionary act applies. *Martinez v. Muraszczak*, 168 P.3d 720, 727–28 (Nev. 2007). First, the acts must involve an element of choice or judgment. *Id.* at 728. Second, the judgment must be the kind the exception is designed to shield: "decisions grounded in social, economic, and political policy." *Id.* at 729 (quotation omitted). However, actions taken in bad faith are not within an actor's discretion. *Falline v. GNLV Corp.*, 823 P.2d 888, 892, n.3 (Nev. 1991).

The Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). Because Nevada looks to federal case law in applying discretionary act immunity, LVMPD has

16

discretionary immunity as to this claim. *See Loggins v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01743-GMN-CWH, 2016 WL 5791543, at *4–5 (D. Nev. Sept. 30, 2016); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008). The plaintiffs' allegations that the theft and failure to treat were done in bad faith does not alter this conclusion. They do not allege that LVMPD's hiring, training, or supervising was done in bad faith. Therefore, I dismiss this claim without prejudice. If the plaintiffs can amend their complaint to add facts supporting an allegation that LVMPD's hiring, training, or supervising was done in bad faith, they may do so.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Naphcare, Inc.'s motion to dismiss **(ECF No. 7) is GRANTED in part.** The plaintiffs' state law claims against Naphcare are dismissed without prejudice.

IT IS FURTHER ORDERED that defendant Clark County's motion to dismiss **(ECF No. 9) is GRANTED in part.** The plaintiffs' state law claims against Clark County are dismissed without prejudice.

IT IS FURTHER ORDERED that the LVMPD defendants' motion to dismiss **(ECF No. 15) is GRANTED in part.** Claims one and two are dismissed with prejudice as to LVMPD. Claim three is dismissed without prejudice as to LVMPD and with prejudice as to Linda Theobald, Prokopios Ziros, and Gustavo Rios. Claim five is dismissed with prejudice. Claim eight is dismissed with prejudice as to LVMPD. Claim nine is dismissed with prejudice as to LVMPD and without prejudice as to Theobald, Prokopios, and Ziros. Claim twelve is dismissed

/ / / / /

/ / / /

without prejudice. I deny the motion to dismiss claims four, seven and sixteen, and claim eight as to Theobald, Prokopios, and Ziros.

DATED this 27th day of August, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE